## Account of Shaw et al.

*Equity—Practice, Supreme Court—Auditors—Findings of fact —Appeals.*

Findings of fact by an auditor as to the amount of compensation which should be allowed trustees based upon competent evidence and confirmed by the court below will not be reversed on appeal.

Argued Jan. 15, 1918.   Appeal, No. 188, Jan. T., 1917, by Edwin A. Potter, Jr., and Charles A. Marshall, as managers of United Copper Syndicate, from decree of C. P. No. 3, Philadelphia Co., Dec. T., 1914, No. 4149, dismissing exceptions to report of auditor in the Matter of the Account of George E. Shaw and Franklin M. Potts, Trustees under agreement dated July 26, 1911, between Assets Realization Company and George E. Shaw and Franklin M. Potts, Trustees, representing the

participants in the loan to the United Copper Company provided for in said agreement. Before BROWN, C. J., STEWART, MOSCHZISKER, FRAZER and WALLING, JJ. Affirmed.

Exceptions to report of Edward W. Fell, Esq., auditor. Before FERGUSON, J.

From the record it appeared that the report of the auditor was in part as follows:

The second "specification of objection" is as follows:

"Second: To the credit of $10,000 claimed on page 13 of said account under date of November 13, 1914, for the payment made to Franklin M. Potts, one of the trustees, as compensation as trustee, upon the ground that the amount of said payment was excessive and that the sum allowed the said trustee as compensation for his services as such should be only an amount which would fairly represent the value of the services actually performed."

Mr. Shaw, one of the accounting trustees, has received no compensation and asks for none. He waived all rights to compensation by reason of an agreement between him and the Assets company, whereby that company agreed to relieve him of certain obligations which it claimed he had assumed.

Mr. Potts, the other trustee, has received $10,000 as compensation and asks for an additional $5,000. The Assets company and the Syndicate Managers object to credit asked for the payment already made to Mr. Potts and also to the additional sum asked for.

The agreement under which the trustees have acted provides for "reasonable compensation to the trustees, their agents, attorneys and counsel, and all expenses, advanced and liabilities made or incurred by the trustees." The duties performed by the trustees, according to the evidence, have been, briefly, as follows:

At the inception of the trusteeship $800,000 was paid to them, which was almost immediately paid out. The trustees also collected securities of the Copper Company

and its subsidiaries. The most conservative estimate of the value of these securities is $1,250,000. Part of these securities have been sold for approximately $590,000. The unconverted collateral still in their hands is worth at least $500,000. At the time the account was filed the trustees had acted under this agreement for a period of almost three and one-half years. Doubtless much of the detail work of the trust was performed by the syndicate managers, counsel and by Edward S. Dunn, who acted as agent for the trustees. The trustees have had physical custody of the assets during the continuance of the trust and their duties have involved many consultations with counsel and with the syndicate managers in New York. The responsibility and worry involved in the handling of assets of such great value, the sale of part of the same, changes in the collateral, and such details as the trustees personally attended to, have been great.

The accountant, Potts, asks for compensation on the basis of a one-half share of a 2½ per cent. commission on a valuation of $1,250,000 passing through the trustees' hands.

The accountants called as witnesses as to the propriety of this amount of compensation to the trustee, George Wharton Pepper, Esq., Ira Jewell Williams, Esq., and Thomas S. Gates, Esq., president of the Philadelphia Trust Company. The qualifications of these men to testify on this subject cannot be questioned. All of these witnesses had familiarized themselves with the account, the agreement under which the trustees were acting and with the testimony of the trustees. They were told to assume the value of the collateral still in the hands of the trustees to be $500,000, which valuation was not questioned.

The testimony of all three witnesses can be summed up in the following paragraph of Mr. Pepper's testimony (page 89) :

"My opinion is that on the facts of this case a trustee's commission of two and a half per cent. on the value pass-

ing through the hands of the trustees would be in accordance with our practice and precedents, of which, under ordinary conditions, one-half would be allowed to Mr. Potts and one-half to Mr. Shaw were it not for the fact that Mr. Shaw had waived his participation in advance; and I have inferred that the minimum valuation which under the facts of this case can be placed upon the corpus of the trust confided to these gentlemen was, say, a million and a quarter of dollars."

Under cross-examination the witnesses stated that they had assumed that much of the detail work had been done by the syndicate managers, counsel and by agents. They further stated that the fact that Mr. Potts was a director of the Assets company, and that the Philadelphia Warehouse Company, of which Mr. Potts was president, was one of the participants in the loan would not, in their opinion, affect the amount of compensation to which he would be entitled as trustee.

No testimony was offered to contradict that adduced on behalf of the trustees.

From the testimony of the trustees and the aforementioned witnesses, the auditor concludes that the credit of $10,000, as compensation to Franklin M. Potts, one of the trustees, asked for by the accountants, is a proper item of credit; and the auditor further concludes that $15,000 is reasonable and proper compensation to the said Franklin M. Potts for his services as said trustee; and the claim of Franklin M. Potts, trustee, for $5,000, as compensation for his services, in addition to what he has already received, is therefore approved and allowed.

The court dismissed exceptions to the report of the auditor. Edwin A. Potter, Jr., and Charles A. Marshall, as managers of the United Copper Syndicate, appealed.

*Error assigned* was in dismissing the exceptions.

*A. H. Wintersteen,* with him *Eldon Bisbee,* for appellants.

*Owen J. Roberts*, for Franklin M. Potts, appellee.

PER CURIAM, February 25, 1918:

We concur with the learned court below that the auditor gave careful consideration to the evidence bearing upon the question of the accountant's compensation, and see no reason for disturbing his allowance of it.

. Appeal dismissed at the costs of appellants.